# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES DAVID PERRINE,

    **Plaintiff,**

v.                        CIVIL ACTION NO. 1:05cv62
                                    (Judge Keeley)

JIM RUBENSTEIN, Commissioner, WV DOC
WILLIAM FOX, Warden, SMCC
DON SPRINGSTON, AWO, SMCC
DAN KIMBLE, SMCC, Unit Manager West Virginia
Department of Corrections,
DR. LARRY WILLIAMSON, CMS, SMCC,

    **Defendants.**

## ORDER ACCEPTING THE MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION AND DISMISSING PLAINTIFF'S COMPLAINT

On April 7, 2005, James David Perrine ("Perrine"), acting pro se, filed a complaint pursuant to 42 U.S.C. §1983 seeking monetary damages, an order restraining the defendants from retaliatory acts, an injunction requiring production/release of all of his medical records, sanctions by the AMA, attorney fees, court costs and all other fees.[1] Perrine is a state inmate at St. Mary's Correctional Center ("SMCC"), St. Mary's, West Virginia and claims that he has a "chronic, persistent and severe medical condition that requires surgery." He alleges that the various members of the prison staff have failed to properly treat his medical condition. Perrine also

---

[1] On July 1, 2005 and November 4, 2005, Perrine filed a document which he characterizes as a temporary restraining order seeking an Order requiring the defendants to immediately schedule corrective surgery and prohibiting the defendants from any type of retaliatory acts. Clearly, these petitions seek the same type of relief sought in Perrine's April 7, 2005 complaint; thus, the Court intends to resolve all the pending issues in this order.

**PERRINE v. RUBENSTEIN, et al.**                                1:05CV62

### ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DISMISSING PLAINTIFF'S COMPLAINT

complains that, as of April 6, 2005, the defendants had made no plans for him to obtain a "much-needed corrective surgery."

In accordance with Local Rule of Prisoner Litigation 83.09, the Court referred this matter to Magistrate Judge James E. Seibert. On July 1, 2005, Magistrate Judge Seibert conducted a preliminary review of this matter pursuant to 28 U.S.C. §§1915(e) and 1915A and issued a report and recommendation as to the viability of Perrine's claims. He recommended that Perrine's complaint be summarily dismissed because Perrine had failed to state a claim upon which relief may be granted.[2] After obtaining an enlargement of time from this Court to object, Perrine filed timely objections to the magistrate judge's report and recommendation on August 5, 2005.

On November 17, 2005, the Court ordered the defendants to produce a copy of Perrine's medical records within 14 days, recognizing that an adequate review of Perrine's complaint required the production of such records to the Court. On November 28, 2005, Perrine requested a copy of his medical records, stating that if he

---

[2] Although the report and recommendation misstated that the plaintiff is a federal inmate being housed in a state prison, this minor error does not affect the accuracy of Magistrate Judge Seibert's review of Perrine's complaint and his recommendation to dismiss such complaint with prejudice.

**PERRINE v. RUBENSTEIN, et al.**                                    **1:05CV62**

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

had the records that he would be able "to do the brief right." The Court granted Perrine's request on December 12, 2005.

After reviewing the record and conducting a *de novo* review of all the matters before the Magistrate Judge, the Court **AFFIRMS** the Magistrate's Report and Recommendation and **DISMISSES WITH PREJUDICE** Perrine's complaint.

## II. BACKGROUND

Perrine's complaint centers around medical treatment that he claims he should be receiving while incarcerated at SMCC. In 1997, prior to his incarceration, Perrine suffered an injury to his neck, and his personal physician found "moderate sized disc extrusion at C4-C5 and C5-C6 localized to the right with considerable impingement on the exiting nerve root, moderate narrowing of the central spinal canal at C3-C4 level, moderate hypertrophy of the uncovertebral joint with mild impingment of the exiting nerve root bilaterally." As a result of his findings, Perrine's personal physician referred him to Dr. James D. Weinstein for a neurosurgical consultation. In October, 1997, Dr. Weinstein concluded that Perrine was a good candidate for surgery. Perrine also states that, in September 2001, he underwent a second MRI at

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

Charleston Area Medical Center in Charleston, West Virginia which revealed that "another disc was messed up."

According to Perrine, in February, 2004, he spoke with Dr. Larry Williamson ("Williamson") at SMCC about his neck injury, and Dr. Williamson prescribed pain medication to treat his symptoms. He also states that in September of 2004, Williamson referred him to another physician for a nerve density test. Perrine claims that the nerve density test revealed "long-term nerve damage" and that the results were sent to Correctional Medical Services, Inc. ("CMS"). He also alleges that after receiving the test results, Williamson told him that he may undergo surgery prior to his release.

In his complaint, Perrine states that, since April 6, 2005, the defendants have failed to provide any form of treatment to alleviate his pain and have made no plans for him to undergo corrective surgery. Perrine also claims that he has unsuccessfully attempted to obtain copies of his medical records, including the MRI and nerve destiny tests.

In his report and recommendation, the Magistrate Judge found that Perrine failed to establish that he has a serious medical condition because, beyond his own allegations, he did not produce any evidence that demonstrates the need for the treatment he seeks. Furthermore, he stated that if the surgery was a necessity, Perrine

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

should have undergone the surgery in 1997 near the time he incurred the neck injury and prior to his incarceration. Thus, Magistrate Judge Seibert concluded that Perrine failed to state a claim upon that relief may be granted against Williamson. With respect to the other defendants, he stated that Perrine failed to make any allegations which revealed the presence of the required elements for supervisory liability, and that Defendants Dan Kimble, Unit Manager at SMCC; Jim Rubenstein, Commissioner of West Virginia Department of Correction; William Fox, Warden of SMCC; and Don Springston, Associate Warden of SMCC were permitted to rely on the opinions of their medical staff.

On August 5, 2005, Perrine filed timely objections to the magistrate judge's report and recommendation.[3] Perrine states that he is currently in a significant amount of pain and that his dosage

---

[3] In his objections, Perrine for the first time asserts that the defendants have violated his Fourteenth Amendment Equal Protection rights. To establish a equal protection violation, Perrine must demonstrate that he has been treated differently from others with whom he is similarly situated and the unequal treatment was the result of intentional discrimination. <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001). In his complaint, Perrine does not assert that he was treated differently than others similarly situated or that the defendants discriminated against him. Rather, in his objections, he contends that CMS widely abuses their authority and that he is not the only inmate to file a §1983 action against CMS at SMCC. Therefore, it appears as though Perrine cannot establish a Fourteenth Amendment Equal Protection claim. However, if he wishes to pursue such claim he must move to amend his complaint or file a separate action because the Court will not consider the equal protection claim as the plaintiff did not assert such claim in his original complaint.

**PERRINE v. RUBENSTEIN, et al**                             1:05cv62

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DISMISSING PLAINTIFF'S COMPLAINT**

of pain medication was recently increased from 600mg per day to 1200mg per day. Thus, he contends he has a severe medical condition that "a layperson can see in his loss of momentum, slow movements and actions." Furthermore, Perrine claims that he now experiences pain in his left arm and wrist and that a new brace has recently been prescribed to provide him with further spinal support. Perrine states that he has discussed these new developments with all the defendants, but he has not been scheduled for surgery. He further indicates that Dr. Trenbrath has stated, and will testify, that "if corrective surgery is not performed, he may have a future irreparable injury and/or a lifelong handicap."

In response to the magistrate judge's contention that he should have obtained the surgery in 1997 if his condition is a serious medical condition, Perrine states that he was unable to undergo the surgery prior to his incarceration because of time restrictions and obvious financial reasons.

Perrine also contends that Dr. Williamson's statement that he may have surgery before he is released from SMCC shows intent to delay his surgery in an effort to save money and with deliberate indifference to his medical needs. With respect to the remaining defendants, Perrine states that they had been advised of his condition, had consulted with Williamson concerning his condition,

and were fully aware of the risks and dangers if the surgery was not performed. He also avers that CMS widely abuses their authority because he is not the only inmate at SMCC to file a 1983 action against CMS.

On August 12, 2005, Perrine also filed a letter with the Court, enclosing a letter from Dr. Richard S. Trenbrath ("Trenbrath") and requesting that the Court consider Trenbrath's letter in its review of his complaint and the Magistrate Judge's Report and Recommendation.

## II. STANDARD OF REVIEW

A district court has the authority to dismiss an _in forma pauperis_ action that is frivolous or malicious or fails to state a claim on which relief can be granted. 28 U.S.C. §1915(e)(II)(B). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. _Franks v. Ross_, 313 F.3d 184, 192 (4th Cir. 2002). Furthermore, a district court should construe _pro se_ complaints liberally. _Haines v. Kerner_, 404 U.S. 519, 520 (1972); see also _Gordon v. Leeks_, 574 F.2d 1147, 1151

**PERRINE v. RUBENSTEIN, et al**                                    **1:05cv62**

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

(4th Cir. 1978) (emphasizing the liberal construction rule for pro se complaints raising civil rights issues). Nevertheless, "conclusions of law or unwarranted deductions of fact are not admitted. A complaint may be dismissed if the law does not support the conclusions argued, or where the facts alleged are not sufficient to support the claim presented." Mylan Laboratories, Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1059 (D. Md. 1991).

### III. ANALYSIS

**A. Summary of Ruling**

Perrine argues that the defendants failed to provide him with adequate medical treatment because they have not provided corrective surgery for his neck injury. To state a claim for inadequate medical care, Perrine must show that the defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Here, Williamson provided Perrine with consistent medical attention, and Perrine's sole complaint is the failure of the

8

defendants to provide neck surgery, which he did not seek until after being incarcerated. Accordingly, Perrine fails to state a claim upon which relief may be granted.

B. **Claims Against Williamson**

In order to establish an Eighth Amendment violation, a prisoner must prove two elements: (1) that, objectively, the deprivation of a basis human need was "sufficiently serious," and (2) that, subjectively, the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The objective component is satisfied by a serious medical condition. A medical condition is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988); Finley v. Trent, 955 F.Supp. 642, 646 (N.D. W.Va. 1997).

The prisoner must also satisfy the subjective component by showing deliberate indifference by prison officials. Wilson, 501

U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. "To establish that a healthcare provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990); <u>Norris v. Detrick</u>, 918 F.Supp. 977, 984 (N.D.W.Va. 1996), <u>aff'd</u>, 108 F.3d 1373 (4th Cir. 1997).

Importantly, courts also distinguish cases that involve a complete denial of medical attention from cases involving a claim of inadequate medical attention. <u>Westlake v. Lucas</u>, 537 F.2d 857, 860-61 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in tort law." <u>Id.</u> at 860. The constitutional standard subjects prison officials

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

to liability only when they are subjectively aware that the inmate faces a substantial risk of harm, and they fail to take reasonable measures to abate that risk. <u>Farmer v. Brennan</u>, 511 U.S. at 847 (1994).

**1. Serious Medical Condition**

Perrine states that he suffered a neck injury in 1997 and that when he sought treatment prior to his incarceration he was told that he was a good candidate for surgery. Perrine claims that he has not received the corrective surgery that his condition requires. He, however, has failed to produce any evidence that demonstrates that the surgery is required for his condition. The letters produced by Perrine do not indicate that surgery is the only appropriate and required treatment of his medical condition.

In an October 6, 1997 letter from Dr. James D. Weinstein to Dr. Richard Trenbath, Dr. Weinstein states, "I think the patient has a reasonable indication for surgery if his symptoms warrant. However, he will have to decide at this time whether or not he would want surgery." This letter does not establish that Perrine's condition requires surgery. Rather, it states that surgery is an option for treatment for Perrine if his symptoms warrant surgery at that time. Clearly, surgery was not mandated by Dr. Weinstein

**PERRINE v. RUBENSTEIN, et al**  1:05cv62

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DISMISSING PLAINTIFF'S COMPLAINT**

because he specifically states that Perrine would have to decide whether he wanted surgery at that time.

Significantly, Perrine suffered his neck injury prior to being incarcerated, yet he only sought surgery after being incarcerated. Perrine states that he did not undergo the surgery in 1997 because of time and financial restrictions, but continues to assert that his condition requires surgical intervention. According to Dr. Weinstein's letter, however, the surgery was an option and one that Perrine had the discretion to determine whether to undergo at that time.

Perrine asserts that Dr. Trenbrath will testify that he will suffer irreparable harm without surgery. However, Perrine produced a letter dated August 4, 2005 from Dr. Richard S. Trenbrath to Perrine in which Dr. Trenbrath states, "The answer to your question is that permanent damage <u>could be</u> caused by damage to your nerves in your neck... We do have evidence from the past that this <u>could</u> be a real problem for you and I certainly think you need to have another MRI and a neurosurgical consult." (emphasis added).

In his letter, Dr. Trenbrath is responding to questions posed by Perrine and not based on a recent examination of the plaintiff. He, therefore, only indicates that permanent damage could possibly be caused by damage to nerves in Perrine's neck, but he does not

conclude that Perrine will in fact suffer irreparable harm. Moreover, Dr. Trenbrath does not indicate that surgery is required at the present time, but recommends, that Perrine undergo another MRI and a neurosurgical consult.

After carefully considering the evidence, the Court concludes that Perrine has failed to produce sufficient evidence indicating that the surgery he seeks is mandated. Furthermore, the medical records demonstrate that a layperson could not easily recognize that his condition requires surgery because Perrine's personal physicians have referred him for neurosurgical consult to evaluate his neck injury. Therefore, Perrine has failed to establish that he has a serious medical condition.

### 2. Deliberate Indifference

Even if his condition were serious, no evidence exists to support the contention that the treatment afforded to Perrine has been so inadequate as to "shock the conscience" or "be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d at 851. Perrine alleges only that he has not received the medical treatment that he believes his medical condition requires. Therefore, Perrine's claim represents a disagreement with the manner in which he is being treated and does not establish deliberate indifference to a serious medical condition on the part of Williamson.

**PERRINE v. RUBENSTEIN, et al**                                   **1:05cv62**

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

Perrine states that he initially spoke with Williamson in February, 2004, approximately seven years after sustaining his neck injury and, at that time, Williamson prescribed pain medication to treat his medical condition. According to Perrine, the pain medication was unsuccessful in treating his symptoms. Perrine also states that in September, 2004, Dr. Williamson referred him to another physician for a nerve density/reaction test as a result of his complaints. Moreover, Perrine states that on July 27, 2005, Williamson increased the dosage of his pain medication and prescribed a new brace to provide him with additional spinal support.

The Court is not in a position to second guess the medical judgments of a licensed physician. The responsibility is to protect individuals from being deprived of a basis human need, such as medical treatment. The record here clearly evidences that Dr. Williamson has been consistently treating Perrine's medical needs.

Perrine contends that Williamson's statement that he may do something about his situation before his release shows intent to delay his surgery in deliberate disregard of his medical needs. If Williamson was providing no form of treatment for Perrine's medical condition, such a statement might create an inference of deliberate disregard for his medical needs. Here, however, when viewed in

light of the entire record before this Court, Williamson's statement suggests that he believed that Perrine might require surgery before his release if the alternative treatments being provided to Perrine did not alleviate his symptoms. Perrine must establish more than that Dr. Williamson may have negligently chosen to pursue an ineffective form of medical treatment for his condition. There is simply no evidence that Williamson has acted with the level of culpability that would subject him to liability in this matter. Accordingly, the Court **AFFIRMS** the Magistrate Judge's recommendation and **DISMISSES WITH PREJUDICE** defendant Williamson

## C. Claims Against Defendants Kimble, Rubenstein, Fox, or Springston

Perrine does not allege that defendants Kimble, Rubenstein, Fox or Springton had any personal involvement in providing medical care to him. Perrine only alleges that he filed his G-1 grievance form with Kimble, filed his G-2 grievance form with Fox, and appealed his level 2 decision to Rubenstein. In his objections, he states that he had advised Springston on numerous occasions about his medical condition, and that Springston has mediated or acted on the issue.

**PERRINE v. RUBENSTEIN, et al**                                    **1:05cv62**

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

In order to establish personal liability against a defendant in a §1983 action, the defendant must be personally involved in the alleged wrong(s) and liability cannot be predicated solely under *respondeat superior*. Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 113 (4th Cir. 1982); Orum v. Haines, 68 F.Supp. 2d 726 (N.D. W.Va. 1999).

A supervisor may also be held liable under §1983, if the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff, the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and there was "an affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994). However, prison officials are entitled to rely on

the opinions, judgment and expertise of prison medical personnel in determining the course of treatment that is medically necessary and appropriate for an inmate. <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990).

In the present matter, there are no allegations that reveal the presence of the required elements for supervisory liability against defendants Kimble, Rubenstein, Fox, or Springston. Here, the supervisory defendants insured that Perrine received medical treatment through the grievance process, and there is no evidence that they should not have been entitled to rely on their health care providers' expertise. In his objections, Perrine states that the other defendants should not be permitted to rely on Williamson's opinion when "other physicians have agreed on the same diagnosis and prognosis of a planned treatment including surgery." However, as noted earlier, Dr. Weinstein and Dr. Trenbrath have not stated categorically that surgical intervention is required to treat Perrine's neck injury, but merely that Perrine is a candidate for surgical intervention. Furthermore, Williamson has been actively treating Perrine's medical condition; thus Kimble, Rubenstein, Fox, or Springston could reasonably rely on his opinion

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

that his specific course of treatment is adequately meeting Perrine's medical needs.

There is simply no evidence to support a finding that the defendants Kimble, Rubenstein, Fox, and Springston tacitly authorized their subordinate healthcare provider to employ grossly incompetent medical procedures. Although Perrine states in his objections that he is not the only inmate who has filed a § 1983 action against CMS at SMCC, he does not point to any specific inmate complaints containing inadequate medical treatment allegations similar to his claims in the present matter. Consequently, the Court concludes that defendants Kimble, Rubenstein, Fox, and Springston are not liable to Perrine because there has been no violation of his constitutional rights as a result of the denial of elective surgery.

## IV. CONCLUSION

Therefore, the Court **ACCEPTS** the Magistrate Judge's Report and Recommendation (dkt no. 10), **OVERRULES** Perrine's objections (dkt no. 16) and **DISMISSES** Perrine's complaint **WITH PREJUDICE**. Accordingly, Perrine's motions for injunctive relief (dkt nos. 14 & 21) and motion to expedite hearing (dkt no. 37) are also **DENIED AS MOOT** in light of the Court's ruling.

PERRINE v. RUBENSTEIN, et al                                    1:05cv62

**ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DISMISSING PLAINTIFF'S COMPLAINT**

It is so **ORDERED**.

The Clerk is directed to mail a copy of this Order to the petitioner.

Dated: April _____10_____, 2006.

_____
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE